**WILMER CUTLER PICKERING HALE AND DORR LLP**
SONAL N. MEHTA (SBN 222086)
JESSICA LEWIS (SBN 302467)
MADEEHA DEAN (SBN 340563)
Sonal.Mehta@wilmerhale.com
Jessica.Lewis@wilmerhale.com
Madeeha.Dean@wilmerhale.com
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

ARI HOLTZBLATT (SBN 354631)
Ari.Holtzblatt@wilmerhale.com
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6443

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTHONY IRVING, et al., | Case No. 3:26-cv-01127-WHO |
| Plaintiffs, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT** |
| v. | |
| META PLATFORMS, INC., | Judge: Hon. William H. Orrick |
| Defendant. | Courtroom 2, 17th Floor |
| | Date: July 7, 2026 |
| | Time: 2:00 PM |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ...............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................................1

BACKGROUND ...................................................................................................................................3

    A.    The Alleged Third-Party Scam ...........................................................................................3

    B.    Meta's Efforts To Address Fraudulent Ads .......................................................................4

    C.    Meta's Terms Of Service ....................................................................................................4

ARGUMENT.........................................................................................................................................5

I.    Plaintiffs' Claims Are Barred By Section 230...................................................................5

    A.    Meta Is An Interactive Computer Service Provider...........................................................6

    B.    Plaintiffs' Claims Would Impose Liability On Meta As A Publisher ....................................6

    C.    Meta Did Not Materially Contribute To The Ads' Unlawfulness ...........................................7

II.    If The Complaint Is Construed To Allege Meta Created The Fraudulent Ad Content, The Court Lacks Jurisdiction Under SLUSA.........................................................11

III.    Plaintiffs Fail To Plausibly Allege Essential Elements Of Their Claims ..........................14

    A.    Plaintiffs Do Not Adequately Allege Aiding And Abetting Fraud (Count I)........14

        1.    Plaintiffs do not plausibly allege actual knowledge. ...............................14

        2.    Plaintiffs do not plausibly allege substantial assistance. ..........................16

        3.    Disputing SLUSA's "in connection with" prong would concede causation. ..................................................................................................................17

    B.    Plaintiffs Do Not Adequately Allege Their Contract, Implied Covenant, And Promissory Estoppel Claims (Counts II, III, and IV) ...................................17

        1.    Plaintiffs do not plausibly allege an enforceable promise. ........................17

        2.    Plaintiffs do not plausibly allege breach of any purported promise. .........20

        3.    Plaintiffs' promissory estoppel claim is independently deficient.............21

    C.    Plaintiffs Do Not Adequately Allege Negligence (Count V) ...............................21

        1.    Plaintiffs allege only nonfeasance that does not support a duty. ..............21

        2.    Plaintiffs' claim is barred by the economic loss rule...............................23

        3.    Disputing SLUSA's "in connection with" prong would concede causation. ..................................................................................................................24

    D.    Plaintiffs Fail To Adequately Allege Unjust Enrichment (Count VI) ...................24

IV.    Rule 12(b)(6) Dismissal Should Be With Prejudice.........................................................25

CONCLUSION....................................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.C.L. Computers and Software, Inc. v. United States*,
2017 WL 6060267 (N.D. Cal. Mar. 13, 2017)..........................................................................22

*Alamilla v. Hain Celestial Group*,
30 F. Supp. 3d 943 (N.D. Cal. 2014) ................................................................................3, 4

*All Steel Engines v. Taylor Engines*,
88 F. Supp. 745 (N.D. Cal. 1950) ............................................................................16

*American Master Lease LLC v. Idanta Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014) ....................................................................13, 14, 17

*Anderson v. Edward D. Jones & Co., L.P*,
990 F.3d 692 (9th Cir. 2021) ...........................................................................11, 13

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) .........................................................................24

*Baldino's Lock & Key Service, Inc. v. Google LLC*,
285 F. Supp. 3d 276 (D.D.C. 2018) .......................................................................9

*Barfuss v. Live Nation Entertainment, Inc.*,
2025 WL 1843207 (C.D. Cal. May 14, 2025) ........................................................19

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .....................................................................6, 7, 19

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) ...............................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................21

*Bogard v. TikTok Inc.*,
2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ........................................................23

*Bouck v. Meta Platforms, Inc.*,
2026 WL 810036 (N.D. Cal. Mar. 24, 2026)............................................... *passim*

*Bradshaw v. SLM Corp.*,
652 F. App'x 593 (9th Cir. 2016) ...........................................................15

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) .........................................................................21

*Calise v. Meta Platforms, Inc.*,
    810 F. Supp. 3d 1038 (N.D. Cal. 2025) .................................................................................20, 24

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024) ...........................................................................................7, 8, 20

*Calise v. Meta Platforms, Inc.*,
    2026 WL 61483 (N.D. Cal. Jan. 8, 2026) ..................................................................................20

*Callahan v. Ancestry.com Inc.*,
    2021 WL 2433893 (N.D. Cal. June 15, 2021) ............................................................................9

*Caraccioli v. Facebook, Inc.*,
    700 F. App'x 588 (9th Cir. 2017) ..............................................................................................19

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ......................................................................................8, 10, 11

*Casey v. U.S. Bank National Association*,
    127 Cal. App. 4th 1138 (2005) ...........................................................................................14, 17

*Castronuova v. Meta Platforms, Inc.*,
    2025 WL 1914860 (N.D. Cal. June 10, 2025) ..........................................................................25

*Chadbourne & Parke LLP v. Troice*,
    571 U.S. 377 (2014).....................................................................................................................13

*Copart, Inc. v. Sparta Consulting, Inc.*,
    339 F. Supp. 3d 959 (E.D. Cal. Sept. 10, 2018) ................................................................24, 25

*Dangaard v. Instagram, LLC*,
    2022 WL 17342198 (N.D. Cal. Nov. 30, 2022) .........................................................................6

*Delgado v. Trax Bar & Grill*,
    36 Cal. 4th 224 (2005) ...............................................................................................................23

*Diaz v. Intuit, Inc.*,
    2018 WL 2215790 (N.D. Cal. May 15, 2018)......................................................................15, 17

*Divino Group LLC v. Google LLC*,
    2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ...........................................................................8

*Doe 1 v. Twitter, Inc.*,
    148 F.4th 635 (9th Cir. 2025) ......................................................................................................8

*Doe No. 14 v. Internet Brands, Inc.*,
    2016 WL 11824793 (C.D. Cal. Nov. 14, 2016).........................................................................23

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025) ................................................................................................7, 8

*Doe v. Grindr Inc.*,
    No. 24-1202 (U.S. Oct. 14, 2025)..........................................................................................7

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ....................................................................................8, 22, 23

*Erlich v. Menezes*,
    21 Cal. 4th 543 (1999) .........................................................................................................23

*Estate of Bride ex rel. Bride v. Yolo Technologies, Inc.*,
    112 F.4th 1168 (9th Cir. 2024) ..............................................................................................6

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .....................................................................................8, 9, 25

*Forrest v. Meta Platforms, Inc.*,
    737 F. Supp. 3d 808 (N.D. Cal. 2024) .................................................................................11

*Freeman Investments, L.P. v. Pacific Life Insurance Co.*,
    704 F.3d 1110 (9th Cir. 2013) .............................................................................................12

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) .............................................................................................9, 10

*Gerber v. Twitter, Inc.*,
    2024 WL 1354449 (N.D. Cal. Mar. 29, 2024).....................................................................23

*Goddard v. Google*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...............................................................................10

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ...............................................................................24

*Howard v. Superior Court of Los Angeles County*,
    2 Cal. App. 4th 745 (1992) ..................................................................................................17

*In re Apple Inc. App Store Simulated Casino-Style Games Litigation*,
    806 F. Supp. 3d 1015 (N.D. Cal. 2025) .................................................................................7

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) .........................................................................................14, 15

*In re Kingate Management Limited Litigation*,
    784 F.3d 128 (2d Cir. 2015)................................................................................................12

*In re Mortgage Fund '08 LLC*,
    527 B.R. 351 (N.D. Cal. 2015) ............................................................................................17

*In re Social Media Adolescent Addiction/Personal Injury Products Liability
    Litigation*, 702 F. Supp. 3d 809 (N.D. Cal. 2023) ..............................................................22

*Isgur v. Meta Platforms, Inc.*,
    2026 WL 194640 (N.D. Cal. Jan. 26, 2026) ........................................................................18, 25

*Kennedy v. Meta Platforms, Inc.*,
    2024 WL 4565091 (N.D. Cal. Oct. 23, 2024).......................................................................18, 19

*Kroetch v. BAC Home Loan Services*,
    2011 WL 4502350 (N.D. Cal. Sept. 27, 2011) ...........................................................................20

*Lim v. Charles Schwab & Co., Inc.*,
    2015 WL 7996475 (N.D. Cal. Dec. 7, 2015) ..............................................................................12

*Lindstrom v. Jayud Global Logistics Ltd. et al.*,
    No. 1:25-cv-09662 (S.D.N.Y.)...................................................................................................1

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)...............................................................................18

*Marcelos v. Dominguez*,
    2008 WL 2788173 (N.D. Cal. July 18, 2008)........................................................................16, 17

*Marshall's Locksmith Service Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ...................................................................................................9

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010) ...............................................................................................21, 22

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)................................................................................................................12, 13

*Moore v. Centrelake Medical Group, Inc.*,
    83 Cal. App. 5th 515 (2022) .......................................................................................................23

*Murphy v. Twitter*,
    60 Cal. App. 5th 12 (2021) ...........................................................................................................7

*Musk v. OpenAI, Inc.*,
    2025 WL 1482386 (N.D. Cal. May 1, 2025).............................................................................14

*Nevis v. Wells Fargo Bank*,
    2010 WL 11636091 (N.D. Cal. Jan. 13, 2010).........................................................................14

*Noah v. AOL Time Warner, Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003) ...................................................................................19, 20

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    904 F.3d 821 (9th Cir. 2018) .........................................................................................12, 13, 25

*O'Connor v. Uber Technologies, Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .........................................................................................25

*O'Kroley v. FastCase, Inc.*,
   831 F.3d 352 (6th Cir. 2016) ...............................................................................................9, 10

*Olson v. Children's Home Society*,
   204 Cal. App. 3d 1362 (1988) ....................................................................................................23

*Oster v. Caithness Corp.*,
   2017 WL 3727174 (N.D. Cal. Aug. 30, 2017) ......................................................................20, 21

*Parents for Privacy v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) ....................................................................................................25

*Peredia v. HR Mobile Services, Inc.*,
   25 Cal. App. 5th 680 (2018) ...........................................................................................13, 14, 24

*Pete v. Facebook Data Breach*,
   2026 WL 32635 (N.D. Cal. Jan. 6, 2026) ...................................................................................19

*Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*,
   795 F. Appx. 741 (11th Cir. 2019)...............................................................................................16

*Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*,
   352 F. Supp. 3d 1226 (S.D. Fla. 2018) ........................................................................................16

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) .........................................................................................23

*Planet Green Cartridges, Inc. v. Amazon.com, Inc.*,
   2025 WL 869209 (9th Cir. Mar. 20, 2025).................................................................................8, 22

*Prager University v. Google LLC*,
   85 Cal. App. 5th 1022 (2022) ........................................................................................................7

*Pratt v. Higgins*,
   2023 WL 4564551 (N.D. Cal. July 17, 2023)...............................................................................17

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2013 WL 4778140 (N.D. Cal. Sept. 6, 2013) ..............................................................................21

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
   509 F. Supp. 3d 1154 (N.D. Cal. 2020) .......................................................................................14

*Scala v. Citicorp Inc.*,
   2011 WL 900297 (N.D. Cal. Mar. 15, 2011)................................................................................13

*Shared.com v. Meta Platforms, Inc.*,
   2022 WL 4372349 (N.D. Cal. Sept. 21, 2022) ............................................................................18

*Sheen v. Wells Fargo Bank, N.A.*,
   12 Cal. 5th 905 (2022) ...........................................................................................................23, 24

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017) .......................................................................25

*SLH Industrial, LLC v. JPMorgan Chase Bank, N.A.*,
    2025 WL 2629543 (C.D. Cal. July 28, 2025) .......................................................16

*Squeeze Me Once, LLC v. SunTrust Bank*,
    630 F. Supp. 3d 763 (M.D. La. 2022) ..................................................................16

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ..........................................................................................16

*WhatsApp Inc. v. NSO Group Technologies Ltd.*,
    17 F.4th 930 (9th Cir. 2021) ..............................................................................14

*White v. FCA US LLC*,
    2022 WL 3370791 (N.D. Cal. Aug. 16, 2022) ......................................................23

*Wilkinson v. Meta Platforms, Inc.*,
    No. 25-6436 (9th Cir. Dec. 16, 2025), Dkt. 13 .......................................................7

*Young v. Facebook, Inc.*,
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)........................................................19

*Zahabi v. Bank of America, N.A.*,
    2012 WL 12920507 (N.D. Cal. July 16, 2012).......................................................15

*Zelig v. County of Los Angeles*,
    27 Cal. 4th 1112 (2002) .....................................................................................22

*Zeran v. America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .........................................................................19, 20

*Ziencik v. Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023).........................................................22

**Rules, Regulations, Statutes**

15 U.S.C. § 78bb (Securities Litigation Uniform Standards Act) (SLUSA)......................... *passim*

15 U.S.C. § 78u-4 (Private Securities Litigation Reform Act) (PSLRA)...................................11

47 U.S.C. § 230 (Communications Decency Act) .................................................... *passim*

FINRA Rule 2210 .......................................................................................................5

Fed. R. Civ. P.
    9(b)...................................................................................................................14
    12(b)(1) .........................................................................................................1, 25
    12(b)(6) .........................................................................................................8, 32

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT, on July 7, 2026 at 2:00 P.M. in Courtroom 2, this Motion To Dismiss filed by Defendant Meta Platforms, Inc. will be heard. Pursuant to Federal Rules of Civil Procedure 12(b)(6), or, in the alternative, Rule 12(b)(1), Meta moves to dismiss the Complaint in the above-captioned action. This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, and accompanying declaration and exhibits.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs allege they were defrauded by a criminal network that orchestrated a "pump-and-dump" scheme involving Jayud Global Logistics Ltd. ("JYD"), a publicly traded security then listed on NASDAQ. As alleged, the scammers published ads on Facebook and Instagram for "investment clubs" that promised high returns. After clicking the ads, Plaintiffs claim they were led to group chats on WhatsApp, an encrypted messaging service. In those chats, the scammers allegedly engaged in months-long conversations about investments, ultimately advising Plaintiffs to invest in JYD. The scammers then sold off their shares before the price dropped.

The Complaint does not allege that Meta has any interest in JYD or had any knowledge of the communications in which the scammers told Plaintiffs to purchase shares of it. And indeed, there is a pending class action in the Southern District of New York seeking recovery for the same scam against the issuers of JYD.[1] Nonetheless, Plaintiffs seek to hold Meta liable for allegedly not preventing them from being misled by the scammers' ads into joining the groups, where weeks or months later the scammers—not Meta—encouraged them to buy the stock.

No matter how Plaintiffs characterize their claims, they are barred at the threshold by federal law. Section 230 of the Communications Decency Act bars claims that would impose liability on Meta for publishing third-party content. It bars Plaintiffs' claims here because they do not allege, as they must, that Meta materially contributed to the ads' alleged unlawfulness—i.e., the alleged fraudulent ad content. Instead, Meta's alleged role consists entirely of providing neutral ad tools that "optimized" ad components provided by advertisers, maintained advertisers' chosen message, and published creative variants only after an advertiser reviewed them, selected them,

---

[1] *Lindstrom v. Jayud Glob. Logistics Ltd. et al.*, No. 1:25-cv-09662 (S.D.N.Y.).

and clicked "publish." In contrast, the scammers "exploit[ed]" those tools to disseminate their own message of access to investment advice with the promise of high returns. Compl. ¶ 39. Plaintiffs do not—and cannot—allege Meta's tools created or selected that message, which is what rendered the ads allegedly unlawful. Section 230 accordingly bars their claims.

If, however, Plaintiffs try to evade Section 230 by arguing that Meta—not the scammers—created the fraudulent ad content, they run headlong into another federal statute that bars their claims. The Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1), prohibits class actions like Plaintiffs' that claim a defendant made a material representation in connection with their purchase of a nationally-listed security like JYD. If Plaintiffs' theory, endorsed by a substantially similar case brought by Plaintiffs' counsel, *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036 (N.D. Cal. Mar. 24, 2026), were the right way to read the Complaint, it would mean that Plaintiffs alleged Meta made a misrepresentation in connection with Plaintiffs' purchase of a covered security—precisely what SLUSA bars. And, to the extent Plaintiffs try to evade SLUSA by arguing Meta's conduct was not "in connection with" their purchase of JYD shares, it would concede their failure to plead the causation elements of their claims.

Independent of these threshold deficiencies, Plaintiffs also fail to plausibly allege essential elements of each claim. *First*, their aiding and abetting claim (Count I) fails because they do not plausibly allege Meta had *any* knowledge of the JYD scam before it was completed or that Meta intended to facilitate that scam. *Second*, as *Bouck* recognized on substantively identical allegations, Plaintiffs fail to state a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel (Counts II, III, and IV) because they do not identify an enforceable promise by Meta to remove or prevent the creation of the challenged ads—an obligation Meta's Terms expressly disclaim. 2026 WL 810036, at *7-8. *Third*, Plaintiffs' negligence claim (Count V) fails because it alleges only nonfeasance and does not plausibly allege Meta and Plaintiffs share a "special relationship." The claim is also barred by the economic loss rule because it is not independent of the contract between the parties, and thus cannot evade the prohibition against recovering noneconomic harms in a breach of contract case. *Finally*, Plaintiffs' unjust enrichment claim (Count VI) fails because no such cause of action exists and no quasi-

contract claim may lie where an express contract covers the subject matter. Meta's Terms expressly disclaim the obligation this claim would impose.[2]

**BACKGROUND**

### A.   The Alleged Third-Party Scam

Plaintiffs allege injury from an "investment scam[] perpetrated by an organized criminal network operating out of China." Compl. ¶ 9. They claim "scammers … target[ed] victims" with Facebook and Instagram ads promoting "investment clubs" with access to investment recommendations, often featuring celebrities and promising high returns. *Id.* ¶¶ 10, 71-76.

Plaintiffs claim the scammers "exploit[ed]" Meta's generally available advertising tools to create and publish their ads. Compl. ¶¶ 39, 120. The scammers allegedly used Meta's "Flexible Format tool," which optimizes the formatting of advertiser-provided ad elements (e.g., by displaying a single image, video, or collection of images) based on ad placement. *Id.* ¶ 121; Declaration of Jessica Lewis ("Lewis Decl."), Ex. A. The scammers also allegedly used Meta's "Dynamic Creative tool," which purportedly "mixes and matches" advertiser-provided videos, images, and text to "allow[] [*the advertiser*] to automatically create … variations" of its ads. Compl. ¶ 122[3]; *id.* Ex. C. And the scammers allegedly used Meta's "Advantage+ Creative tool," which adds "creative enhancements" to the images, text, and video an advertiser uploads. Compl. ¶ 123; Lewis Decl. Ex. B. This tool can, for example, display images as a slideshow, adjust image brightness, or create "variations" of an advertiser's text and images, without changing the ad's "core message," that the advertiser can review and select which, if any, to publish. Compl. ¶ 123; Lewis Decl. Ex. B & C. The Complaint incorporates by reference reporting showing that an advertiser must first review and select variations generated by Advantage+ Creative and then click "publish" before any variations can be delivered to users. Compl. ¶ 124 n.45. No tool is alleged to create any content on its own; instead, each optimizes advertiser-provided material.[4]

---

[2] The Complaint labels Plaintiffs' unjust enrichment claim "Count VII" but the Complaint contains only six counts. Meta accordingly refers to this claim as "Count VI" in this motion.

[3] All emphasis is added unless otherwise noted.

[4] The pages attached as exhibits to the Lewis Declaration are incorporated by reference in the Complaint. *See* Compl. ¶¶ 120-127; *Alamilla v. Hain Celestial Grp.*, 30 F. Supp. 3d 943, 944 (N.D.

Plaintiffs allege they saw Facebook and Instagram ads for "fake investment clubs." Compl. ¶¶ 71-74. They allegedly clicked on the ads and were then led to a "private WhatsApp group." WhatsApp is "an end-to-end encrypted service allowing for private communications among its users." *Id.* ¶ 26. Once in the group, the "scammers posed as representatives of the featured advisors." *Id.* ¶¶ 80-81. The "scammers also created dozens of fake accounts" and posed as club members within the WhatsApp group. *Id.* ¶ 82. The scammers supposedly built trust with Plaintiffs in the group "over a period of weeks or months" until, in March 2025, they began to encourage members to purchase JYD shares, which the scammers later sold at inflated prices. *Id.* ¶¶ 84-90. The JYD stock price fell when undisclosed shares became public on April 1, 2025. *Id.* ¶¶ 91-92. Plaintiffs allege that unidentified individuals reported ads to Meta "*after* the scheme was revealed," *id.* ¶ 117, months after they had seen the ads that allegedly drew them into the scam, *id.* ¶¶ 79-85.

## B.    Meta's Efforts To Address Fraudulent Ads

The articles the Complaint cites and incorporates by reference report that Meta has taken significant steps to address scam content. As of May 2025, for example, Meta was "testing the use of facial-recognition technology" to detect scam ads featuring the likenesses of celebrities or other well-known individuals.[5] Another article reported that Meta also "'invests heavily in [its] trained enforcement and review teams'" and has "'specialized detection tools to identify fraudulent activity.'"[6] Meta removed 1.1 billion pieces of spam content in just the second quarter of 2023.[7]

## C.    Meta's Terms Of Service

Plaintiffs agree there is a valid, enforceable contract between them and Meta "consisting of [Meta's Terms], which incorporated by reference the Community Standards and Advertising Policies." Compl. ¶ 150. Meta's Terms are unambiguous that Meta "do[es] not control or direct what people and others do or say, and [Meta is] not responsible for their actions or conduct

_____

Cal. 2014). The language that appears on some of these pages has changed since Plaintiffs filed the Complaint, but none of those changes are material to this motion.

[5] Horwitz & Au-Yeung, *Meta Battles an 'Epidemic of Scams' as Criminals Flood Instagram and Facebook*, WALL ST. J., (May 15, 2025), https://tinyurl.com/3v9fbyy7 (Compl. ¶¶ 40, 43).

[6] Smith, *Phony Billionaires on Facebook are Scamming Americans Out of their Life Savings*, WALL ST. J. (Mar. 15, 2024), https://tinyurl.com/34nze5hx (Compl. ¶¶ 56, 65).

[7] *Id.*

(whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content)." *Id.* Ex. A at 9-10 (§ 4.3). Instead, its policies set forth obligations on *users* to refrain from posting content that violates those policies. For example, Meta's Community Standards state that Meta "do[es] not allow" scam content, and that Meta "aim[s]" to protect users from such content by "removing content and combatting behavior that purposefully employs deceptive means." *Id.* Ex. B at 2; *see also id.* ¶¶ 105-107. Moreover, Meta's Terms expressly allow users to control both "the types of information … use[d] to determine which ads" they see and "the types of ads and advertisers [they] see." Compl. Ex. A at 4-5 (§ 2).

Meta informs users that it employs teams and develops advanced technical systems to detect "potential misuse" of its services, and, "[i]f [it] learn[s] of content" that violates its policies, it "may take appropriate action … that may include – notifying [the user], offering help, removing content," or other potential actions. Compl. ¶ 101. Meta also warns its users that its "[ad] review process may not detect all policy violations." Lewis Decl. Ex. D at 2.[8]

## ARGUMENT

Regardless of how Plaintiffs cast their claims, they must be dismissed. If, as Meta has always argued, Plaintiffs agree that Meta itself did not create the fraudulent ad content, their claims are barred by Section 230. If instead Plaintiffs adopt *Bouck*'s reasoning that Meta created that content, then that argument would trigger SLUSA's bar against claims alleging material misrepresentations in connection with the purchase of a covered security. And, if Plaintiffs try to have it both ways by arguing Meta created the fraudulent content but that it was not material to their decision to purchase JYD shares, that would concede the absence of a causal connection between Meta's conduct and their alleged injuries. In all events, even aside from these threshold defects, Plaintiffs fail plausibly to allege essential elements of their claims.

## I.   PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content

---

[8] Plaintiffs' suggestion that Meta violated FINRA Rule 2210, Compl. ¶ 114, makes no sense; the Rule regulates FINRA members, not third parties like Meta.

provider." 47 U.S.C. § 230(c)(1). The statute prohibits liability "under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). It "protects apps and websites which receive content posted by third-party users (i.e., Facebook, Instagram, …, etc.) from liability" for that content. *Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024). Its "robust" protections apply to: "(1) a provider … of an interactive computer service (2) whom a plaintiff seeks to treat … as a publisher or speaker (3) of information provided by another information content provider." *Id.* at 1176 (cleaned up).

Plaintiffs repeatedly concede that the scammers—not Meta—were responsible for the content of WhatsApp communications encouraging them to purchase JYD shares. Compl. ¶¶ 80-84. They do not allege Meta contributed, materially or otherwise, to the contents of those chats. Thus, to the extent Plaintiffs have any claim that survives Section 230, it must be based entirely on the challenged ads. Each of Section 230's prongs is satisfied as to these ads.

### A. Meta Is An Interactive Computer Service Provider

Meta provides "the Facebook and Instagram social media platforms," and is thus an interactive computer service provider. Compl. ¶¶ 1, 25; *see also, e.g.*, *Dangaard v. Instagram, LLC*, 2022 WL 17342198, at *4 (N.D. Cal. Nov. 30, 2022).

### B. Plaintiffs' Claims Would Impose Liability On Meta As A Publisher

Plaintiffs' claims "inherently require[] the [C]ourt to treat [Meta] as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). A claim satisfies this prong where it would impose liability for "reviewing, editing, and deciding whether to publish or withdraw from publication third-party content." *Id.*[9]

Each claim hinges on Plaintiffs' disagreement with Meta's "deci[sion] whether to publish or to withdraw from publication" certain ads. *Cf. Barnes*, 570 F.3d at 1102. Each claim would hold Meta liable for "allow[ing]" or "fail[ing] to take down" "ads by the JYD scammers" and/or for the scammers' "exploit[ation]" of Meta's advertising tools to disseminate their content to Meta's users. Compl. ¶¶ 39, 111, 118. The aiding-and-abetting fraud claim (Count I) would hold Meta

---

[9] Plaintiffs' counsel conceded this prong was satisfied "at least in part" by substantially similar claims in *Bouck*. *See* 2026 WL 810036, at *2.

liable for "provid[ing] the platforms necessary to conduct the fraud" and "select[ing] … the content … shown to specific users." *Id.* ¶ 145. The contract, implied covenant, and promissory estoppel claims (Counts II, III, and IV) each would hold Meta liable for "allow[ing] the ads to be" displayed. *Id.* ¶¶ 154, 161, 168. The negligence claim (Count V) faults Meta for providing tools the scammers used to "generat[e], manipulat[e], and enhanc[e] fraudulent content used in the ads," failing to "identify and remove th[e] ads," generally "failing to … monitor, detect, and remove investment scam ads," and "targeting"—that is, publishing—ads to particular users. *Id.* ¶¶ 173-174. And Plaintiffs' unjust enrichment claim (Count VI) similarly targets Meta's alleged failure to "prevent the creation of scam advertisements and to monitor, detect, and remove scam ads." *Id.* ¶ 181.

Plaintiffs' attempt to allege contractual or quasi-contractual promises does not save those claims from Section 230, because—as *Bouck* recognized, and as discussed in detail below, *infra* pp.17-20, they have not plausibly alleged that Meta "manifested its intent to be legally obligated to" take certain content-moderation actions. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 743 (9th Cir. 2024). To avoid Section 230, a contract claim must target a "specific promise or representation," not a "'failure to take certain moderation actions.'" *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025), *cert. denied*, No. 24-1202 (U.S. Oct. 14, 2025). Because Plaintiffs do not allege anything beyond a "general monitoring policy," they do not plausibly allege that their contract-related claims would hold Meta liable as anything but a publisher of third-party content. *Barnes*, 570 F.3d at 1108; *see also Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1036 (2022) (citing *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29-30 (2021)) (Section 230 "foreclosed liability where plaintiffs have identified no enforceable promise allegedly breached").[10]

### C.   Meta Did Not Materially Contribute To The Ads' Unlawfulness

Section 230's third prong is satisfied because Plaintiffs allege, at most, that scammers exploited Meta's content-neutral tools to disseminate the scammers'—not Meta's—fraudulent message. They do not plausibly allege Meta was "responsible, in whole or in part, for the creation

---

[10] "[F]or the defendant to take down third-party content" even to fulfill a promise, it "must monitor the third-party content. … And if that were so, then Section 230 immunity should apply under *Calise.*" *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1048 (N.D. Cal. 2025) (certifying order for interlocutory review); *Wilkinson v. Meta Platforms, Inc.*, No. 25-6436 (9th Cir. Dec. 16, 2025), Dkt. 13 (granting permission to appeal).

or development of" the challenged ads. 47 U.S.C. § 230(f)(3). To survive Section 230, a plaintiff must be "[]able to allege that [the defendant] materially contributed to the content" challenged by the claim. *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019).

A defendant "develop[s]" content under Section 230 by "'materially contributing to its alleged unlawfulness.'" *Planet Green Cartridges, Inc. v. Amazon.com, Inc.*, 2025 WL 869209, at *1 (9th Cir. Mar. 20, 2025). A website that "edits user-created content … retains [its] immunity for any illegality in the user-created content" where "the edits are unrelated to the illegality." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008). That includes edits that "arrang[e] and display[] others' content to users of Facebook." *Divino Group LLC v. Google LLC*, 2022 WL 4625076, at *17 (N.D. Cal. Sept. 30, 2022). The "crucial distinction" is "'between, on the one hand, taking actions (traditional to publishers) that are necessary to the display of unwelcome and actionable content and, on the other hand, responsibility for what makes the displayed content illegal or actionable.'" *Dyroff*, 934 F.3d at 1099. Meta "is immune from liability for the alleged third-party abuses of its" neutral, generally available ad tools. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 646 (9th Cir. 2025); *see also Calise*, 103 F.4th at 745 (similar). This prong cannot be defeated by claiming Meta "merely … augment[ed] the content generally," *Roommates*, 521 F.3d at 1167-1168, or "facilitated the expression of information by individual users," *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003). Nor does a provider materially contribute to content's unlawfulness by using features like algorithms to analyze user posts, recommend content, or match users—all are merely tools "'meant to facilitate the communication and content of others,'" and are "'not content in and of themselves.'" *Grindr*, 128 F.4th at 1153.

Plaintiffs do not plausibly allege Meta contributed to what they allege made the ads unlawful—i.e., the scammer-provided messages promising investment clubs and high returns that were "fraudulent," "scam[s]," or "violated [Meta's] policies" against deceptive content. Compl. ¶¶ 143, 153, 161, 168, 174, 181. Instead, Plaintiffs acknowledge "the *scammers* … target[ed] victims" using "Meta's advertising tools," and the "*scammers* used these advertising tools to deploy an array of advertisements … to target …Facebook and Instagram users." *Id.* ¶¶ 10, 128.

Meta, conversely, is alleged only to have provided content-neutral tools, each of which optimizes or organizes content *provided by the advertiser*. *Id.* ¶ 120.

Meta's Flexible Format tool, for example, allegedly "'automatically optimize[]' the ad" an *advertiser* provides by "select[ing] different ad formats for different ad placements." Compl. ¶ 121; Lewis Decl. Ex. A. The Dynamic Creative tool is limited to "mix[ing] and match[ing]" "the media and ad components [an advertiser] provide[s]." Compl. ¶ 122; *id.* Ex. C at 2-3. Each of these tools "augment[] the content generally," making "edits" "unrelated to the illegality" akin to "correcting spelling, removing obscenity or trimming for length," which are immune under Section 230. *Roommates*, 521 F.3d at 1167-1169. Formatting, for example, is quintessential arranging something for display covered by Section 230. *E.g.*, *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021). Neither tool is alleged to "generat[e], using artificial intelligence, the images and text in the advertisements," *Bouck*, 2026 WL 810036, at *4, and so cannot provide a basis even under *Bouck* for Plaintiffs to circumvent Section 230.[11]

As for the Advantage+ Creative tool, Plaintiffs allege it suggests "creative enhancements," "variations," or "modifications," based on the inputs of third parties—here, the advertisers. Compl. ¶ 123. Crucially, these "enhancements" "maintain[] the core message of [an advertiser's] campaign," created by the advertiser alone. Lewis Decl. Ex. B. Courts have routinely held that Section 230 bars claims even when it is alleged that automated tools translate or transform third-party content. *Marshall's Locksmith Service Inc. v. Google LLC*, for example, held Section 230 protected Google's translation of inexact location information on scam-locksmiths' websites (like their telephone area code) into precise map pinpoints, because Google "use[d] a neutral algorithm to make th[e] translation" from third-party content of varying precision to a "website design that portrays all search results … with the maximum precision possible." 925 F.3d 1263, 1270-1271 (D.C. Cir. 2019); *see also Baldino's Lock & Key Serv., Inc. v. Google LLC*, 285 F. Supp. 3d 276, 283 (D.D.C. 2018) (similar). Similarly, in *Gentry v. eBay, Inc.*, the court held Section 230 barred claims based on eBay's application of a star symbol or "Power Seller" designations to profiles to

---

[11] To the extent *Bouck* suggested otherwise with respect to these tools, that suggestion is unsupported by Plaintiffs' allegations and contradicts the documents incorporated by reference.

indicate a threshold of positive feedback, even though the designations were allegedly based on fraudulent reviews, because eBay "did not create or develop the underlying misinformation." 99 Cal. App. 4th 816, 834 (2002); *see also O'Kroley v. FastCase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) ("automated editorial acts" immunized by Section 230 even where they allegedly produced a snip of third-party content that rendered it defamatory). *Bouck* ignored this argument and did not address these cases. *See Bouck*, 2026 WL 810036, at *5 (finding material contribution despite correctly observing that the "message" is "input[]" and "chosen" by "the user").

Moreover, Plaintiffs allege an advertiser at their own discretion reviews, selects, and clicks a button to publish variations generated by Advantage+ Creative before they can be shown to users. *Supra* p.3. Courts have repeatedly held that Section 230 bars claims even where the provider suggested content to a third party if the ultimate "selection of the content was left exclusively to the [advertiser]." *Carafano*, 339 F.3d at 1124. In *Carafano*, for example, the defendant provided a questionnaire of more than 50 questions with multiple choice answers, and then users, who in that case falsely posed as someone else, selected sexually suggestive answers in a way that defamed the person they were impersonating. *Id.* at 1121. Even though the provider drafted the answers users selected, Section 230 barred the claims. *Id.* at 1124. So too in *Goddard v. Google*, which upheld Section 230 immunity for Google when its "Keyword Tool" algorithmically suggested additional keywords to advertisers, and, in that case, when an advertiser put "ringtone" into the tool, suggested the purportedly fraudulent keyword "free ringtone." 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009). Section 230 barred the claim in that case "[e]ven assuming that Google is aware of fraud in the mobile subscription service industry and yet disproportionately suggests the term 'free ringtone' in response to an advertiser's entry of the term 'ringtone,'" because, "[l]ike the menus in *Carafano*, Google's Keyword Tool is a neutral tool" that "does nothing more than provide options that advertisers may adopt or reject at their discretion." *Id.* at 1197-1198.

*Bouck* did not address *Goddard*. And it distinguished *Carafano* based on a mistaken view that the website in *Carafano* "did not endeavor to create the information itself." 2026 WL 810036, at *5. But that website *did* create "pre-set questions" *and* "a menu of possible responses to those questions" that third parties could select from. *Carafano*, 339 F.3d at 1125. The menu of responses

were pre-written by the website and included "sexually suggestive" options, including those selected by the third-party wrongdoer: "the person posting the profile selected 'Playboy/Playgirl' for 'main source of current events' and 'looking for a one-night stand' for 'why did you call.'" *Id.* at 1121. It is thus incorrect that the website in *Carafano* did not create any of the offending content—and incorrect to conclude that was what mattered for Section 230. *Id.* Instead, what mattered was whether "the *selection* of the content"—including website-written content—"was left exclusively to the user," including "the particular options chosen." *Id*. at 1124.

*Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808 (N.D. Cal. 2024), is not to the contrary. There, the court found the plaintiff failed to allege how Meta's tools contributed to the ads, leaving a factual dispute as to whether "the tools themselves contributed to the *content* of the ads, including to the aspects of the content that are allegedly illegal." *Id.* at 818. But here, it was "[t]he JYD scammers"—not Meta—that "targeted potential victims with ads" that "promoted fake investment clubs." Compl. ¶ 71. It was the "scammers," not Meta, that "posed as financial advisors" in private WhatsApp group chats and "encouraged victims to purchase securities." *Id.* ¶ 11. And it was the scammers, not Meta, that "created dozens of fake accounts, posing as club members within the WhatsApp group and touting their prior successes" to "create[] the appearance of legitimacy… that helped lure victims into the scheme." *Id.* ¶ 82. Meta's argument here does not require the Court to find that Plaintiffs' allegations are "erroneous," *Forrest*, 737 F. Supp. 3d at 818, or to weigh in on a fact dispute, *Bouck*, 2026 WL 810036, at *4. Instead, Meta's position is that Plaintiffs' allegations, taken as true, demonstrate that Section 230 bars Plaintiffs' claims.

## II. IF THE COMPLAINT IS CONSTRUED TO ALLEGE META CREATED THE FRAUDULENT AD CONTENT, THE COURT LACKS JURISDICTION UNDER SLUSA

To the extent Plaintiffs seek to evade Section 230 based on *Bouck*'s material contribution holding, SLUSA would deprive the Court of jurisdiction. SLUSA "is designed to prevent persons injured by securities transactions from engaging in artful pleading or forum shopping in order to evade limits on securities litigation" and to "prevent state class actions alleging fraud" from frustrating the restrictions of the Private Securities Litigation Reform Act (PSLRA). *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692, 699 (9th Cir. 2021). "SLUSA is to be given a broad

interpretation," and "bars a plaintiff class from bringing (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Id.* "'Dismissals under SLUSA are jurisdictional,' governed by [Rule] 12(b)(1)." *Id.*

The first, second, and fifth of these prongs are beyond dispute. A "covered class action" is "any single lawsuit in which … damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B)(i)(I). Plaintiffs allege a class of "thousands." Compl. ¶ 27(a)-(b). "A 'covered security' is one traded nationally and listed on a regulated national exchange." *Lim v. Charles Schwab & Co., Inc.*, 2015 WL 7996475, at *5 n.4 (N.D. Cal. Dec. 7, 2015) (citing 15 U.S.C. § 78bb(f)(5)(E)). JYD is "listed on NASDAQ." Compl. ¶ 12. And Plaintiffs raise exclusively state law claims. Thus, whether SLUSA bars Plaintiffs' class action depends on whether their claims allege (1) Meta made a misrepresentation and (2) that alleged misrepresentation was "in connection with" their decision to purchase JYD shares.

On the misrepresentation prong, Plaintiffs' theory must be that Meta contributed to the fraudulent ad content or participated in the deception. Otherwise, Section 230 bars their claims. *Supra* pp.7-11. Indeed, it was only because *Bouck* concluded that the plaintiffs alleged Meta "generat[ed] … the images and text in the advertisements," and that "the fraudulent statements in the ads … w[ere] created by Meta," that it held Meta was sufficiently alleged to be "an 'information content provider' of the fraudulent ads." 2026 WL 810036, at *2, *4-5. If the Court accepts that theory based on the allegations in this Complaint, SLUSA's misrepresentation prong is satisfied. Alleging that Meta itself helped create deceptive materials that form the basis of liability would mean that Meta's purported "'deceptive statements or conduct form the gravamen or essence of [Plaintiffs] claim.'" *Lim*, 2015 WL 7996475, at *5 (quoting *Freeman Investments, L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013)); *see also In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 132 (2d Cir. 2015) ("[C]laims accusing the defendant of complicity in the false conduct that gives rise to liability *are* subject to SLUSA's prohibition, while claims of false conduct in which the defendant is *not* alleged to have had any complicity are not.").

The theory of Plaintiffs' case also satisfies SLUSA's "in connection with" requirement.

"SLUSA's requirement that fraudulent statements be made in connection with the purchase or sale of a covered security must be construed broadly." *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 904 F.3d 821, 828 (9th Cir. 2018) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86 (2006)). An alleged fraudulent statement (like the allegedly fraudulent ad content here) satisfies this "in connection with" prong where it "makes a significant difference to someone's decision to purchase … a covered security." *Anderson*, 990 F.3d at 702-703 (quoting *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387-388 (2014)).

The allegations in this case are analogous to *Scala v. Citicorp Inc.*, 2011 WL 900297 (N.D. Cal. Mar. 15, 2011), which applied SLUSA's bar to claims against a financial institution accused of aiding and abetting a ponzi scheme executed by one of its clients. *Id.* at *1-3. The defendant in *Scala* allegedly "falsely represented" the scammer's "credentials as an investment advisor," allowed the scammer to open accounts despite the scammer's criminal history, and deliberately failed to monitor those accounts for compliance with the law and the defendant's own policies. *Id.* at *6. Plaintiffs' theory in that case was that the defendant "misled" its customers by lending the scammer an "air of legitimacy," and thus "actively participated in misleading the Plaintiff victims, causing them to turn over funds to" a third-party scammer operating a scheme involving the purchase of covered securities. *Id.* The court held the alleged wrongdoing was not "tangential to" but instead "in connection with" a covered securities purchase because "Plaintiffs' losses resulted directly from what they believed to be legitimate transactions involving covered securities." *Id.* at *7. Plaintiffs here similarly allege (under the *Bouck* theory of content-creation) that Meta aided and abetted the JYD scheme by creating fraudulent ad content that lured Plaintiffs into a relationship with third-party scammers, allowing the scammers to publish advertisements and communicate on WhatsApp, and failing to ensure compliance with Meta's policies. *Supra* pp.3-4; *Bouck*, 2026 WL 810036 at *3-4. And, like the *Scala* plaintiffs, Plaintiffs here claim that their losses "resulted directly" from their purchase of JYD shares. *See* Compl. ¶¶ 17, 21-23. SLUSA's "in connection with" prong is thus satisfied.

Indeed, Plaintiffs' theory *must* be that Meta's actions made a significant difference to their decision to purchase JYD shares, the sole source of their claimed injury. Otherwise, they could not

plausibly allege the essential elements of causation on which their claims depend. *See, e.g.*, *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1476 (2014) ("[C]ausation is an essential element of an aiding and abetting claim[.]"); *Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (2018) (negligence requires "proximate cause"). If, as Plaintiffs claim, their injuries stem from fraudulent ad content created by Meta, then that supposed misrepresentation was made "in connection with" Plaintiffs' purchase of a covered security.

**III.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE ESSENTIAL ELEMENTS OF THEIR CLAIMS**

**A.      Plaintiffs Do Not Adequately Allege Aiding And Abetting Fraud (Count I)**

Plaintiffs' aiding and abetting fraud claim is deficient. Under California law, aiding and abetting fraud requires either (a) actual knowledge of another's breach of duty and substantial assistance or encouragement of that breach, or (b) substantial assistance to another in a tortious result where the defendant's own conduct breaches a duty. *Musk v. OpenAI, Inc.*, 2025 WL 1482386, at *5 (N.D. Cal. May 1, 2025). Plaintiffs fail to plausibly allege either.

**1.      Plaintiffs do not plausibly allege actual knowledge.**

Plaintiffs fail to allege, as they must, that Meta had "actual knowledge" of the JYD scammers' fraudulent scheme "prior to or at the time of" the specific fraud alleged. *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1166 (N.D. Cal. 2020); *accord In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("[T]he defendant must have 'actual knowledge of the specific primary wrong the defendant substantially assisted.'" (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005))). This is a high bar, as actual knowledge must be "allege[d] with the requisite specificity" to satisfy Rule 9(b). *Nevis v. Wells Fargo Bank*, 2010 WL 11636091, at *6 (N.D. Cal. Jan. 13, 2010).

Here, the specific fraud alleged is the JYD "stock manipulation scheme." Compl. ¶ 1; *see also id.* ¶¶ 142-143. But the Complaint includes *no* allegation that Meta knew of that scheme "prior to or at the time" it was carried out. *S&S Worldwide*, 509 F. Supp. 3d at 1166. As Plaintiffs concede, Compl. ¶ 26, WhatsApp is "an encrypted service" through which "every type of communication … can be viewed *only* by the intended recipient," *WhatsApp Inc. v. NSO Grp. Tech. Ltd.*, 17 F.4th 930, 933 (9th Cir. 2021). Plaintiffs thus do not and could not allege Meta had

knowledge of the WhatsApp group chats in which the scammers allegedly instructed members to buy JYD stock. *See* Compl. ¶¶ 76-89. Instead, Plaintiffs rely on reports after the JYD scheme concluded and generalized awareness of other scams. *Id.* ¶¶ 56-70, 117. That does not allege contemporaneous, specific knowledge. *E.g.*, *In re First Alliance Mortg.*, 471 F.3d at 993 (knowledge of *other* scams does not plausibly allege knowledge of the "specific primary wrong"); *Diaz v. Intuit, Inc.*, 2018 WL 2215790, at *1, *6 (N.D. Cal. May 15, 2018) (internal documents and "widely reported data breaches" showing company "generally knew tax fraud was occurring on a massive scale every year" did not support the inference that company knew of the specific fraud against the plaintiffs); *accord Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir. 2016). *Bouck*, despite denying Meta's motion to dismiss this claim, agreed that such allegations of generalized knowledge were insufficient to support Plaintiffs' position. 2026 WL 810036, at *6.

To the extent Plaintiffs allege that certain contextual cues should have tipped Meta off to the fraudulent nature of the JYD ads, *e.g.* Compl. ¶¶ 51, 114-116, that theory fails as well. "Liability under an aiding and abetting theory requires knowledge above a mere suspicion that the fraudulent actor is behaving unlawfully." *Zahabi v. Bank of Am., N.A.*, 2012 WL 12920507, at *5 (N.D. Cal. July 16, 2012). Here, Plaintiffs allege that "Chinese ads are particularly prone to be connected to fraudulent activities," Compl. ¶ 51, and that the ads at issue had "hallmarks of investment fraud," *id.* ¶ 112, including "featur[ing] celebrities and reputable investment firms," *id.* ¶ 116. Those allegations do not plausibly suggest *actual knowledge* of the JYD scheme. *Diaz* is informative. There, one plaintiff alleged that "Intuit had contemporaneous information identifying the false returns filed in his name as malicious" and "contemporaneously recognized the account opened by the fraudster in [plaintiff's] name as coming from a 'High Risk Domain.'" 2018 WL 2215790, at *6 (quotation marks omitted). The court held that those allegations supported only "an inference that Intuit was suspicious of potential fraud or knew that there was a risk of fraud," not— as required to state a claim—an inference "that Intuit had 'actual knowledge' of fraud associated with the account opened with [plaintiff's] personal identifying information." *Id.* So too here.

The sole basis on which *Bouck* found sufficiently alleged knowledge was that the court found the ads to be "facially ridiculous" and either created by Meta or subjected to Meta's

automated review process. 2026 WL 810036, at *6. Meta respectfully disagrees with that conclusion. *First*, even if that reasoning were sufficient to plausibly allege Meta's actual knowledge that the *ads* were fraudulent, that still would not allege actual knowledge of the specific primary wrong—the JYD pump-and-dump scheme. Nothing about the alleged ads revealed their connection to the JYD scheme such that review of them would have made Meta aware of that specific scheme while it was happening. *Second*, *Bouck*'s theory of actual knowledge premised on an automated system is inconsistent with foundational principles of corporate knowledge. "[A] corporation acquires knowledge only through its officers or agents," *All Steel Engines v. Taylor Engines*, 88 F. Supp. 745, 748 (N.D. Cal. 1950), not its automated technology. Courts have repeatedly held that automated systems, even those used to detect fraud, do not establish actual knowledge. *See SLH Industrial, LLC v. JPMorgan Chase Bank, N.A.*, 2025 WL 2629543, at *3 (C.D. Cal. July 28, 2025) (automated fraud detection system for wire transfers did not establish actual knowledge); *Squeeze Me Once, LLC v. SunTrust Bank*, 630 F. Supp. 3d 763, 768-769 (M.D. La. 2022) ("[T]he fact that [Defendant]'s systems stored data regarding the misdescription does not constitute [Defendant] having actual knowledge of such[.]"); *cf. Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 352 F. Supp. 3d 1226, 1232 (S.D. Fla. 2018), *aff'd*, 795 F. App'x 741 (11th Cir. 2019) (similar). And that makes sense, given the "staggering" amount of content uploaded to Meta's services. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 480 (2023). It makes no sense—and is unsupported by precedent—to find that a company has actual knowledge of every piece of content into which its automated technology comes into contact. *Bouck* did not address these principles of corporate knowledge and did not support its conclusion that Meta's use of automated technology effectively displaced the requirement of actual knowledge. 2026 WL 810036, at *7.[12]

### 2.    Plaintiffs do not plausibly allege substantial assistance.

Plaintiffs fail to plausibly allege Meta knowingly or purposefully assisted the underlying fraud, as they must to allege "substantial assistance." "[T]he substantial assistance prong of a claim for aiding and abetting fraud must be pled with heightened specificity." *Marcelos v. Dominguez*,

---

[12] Plaintiffs alternatively allege that their aiding-and-abetting claim is supported by Meta's alleged violation of its duties under in either contract or tort. Compl. ¶ 147. That theory fails for the same reasons as their contract and negligence claims on which it depends. *See infra* Parts III.B & C.

2008 WL 2788173, at *9 (N.D. Cal. July 18, 2008). "'Substantial assistance requires a significant and active, as well as a knowing participation in the wrong[.]'" *Pratt v. Higgins*, 2023 WL 4564551, at *10 (N.D. Cal. July 17, 2023). Plaintiffs must allege Meta "'reach[ed] a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'" *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1145 (N.D. Cal. 2021).

Plaintiffs do not plausibly allege Meta "acted to aid the primary tortfeasor '*with knowledge of the object to be attained*.'" *Casey*, 127 Cal. App. 4th at 1146, 1152; *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 365 (N.D. Cal. 2015) ("Ordinary business transactions may satisfy the substantial assistance element if the defendant *actually knew* those ordinary transactions assisted the commission of the specific tort."). Plaintiffs also fail to plausibly allege Meta "'reach[ed] a conscious decision to participate' in the [fraud]," *Barrett*, 523 F. Supp. 3d at 1145, or acted with "the purpose of assisting another in performing a wrongful act," *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749 (1992). Rather, they assert only "failure to act allegations … insufficient to establish substantial assistance for purposes of aiding and abetting liability." *Diaz*, 2018 WL 2215790, at *8; *Barrett*, 523 F. Supp. 3d at 1148 (allegations that Apple "failed to revoke previously granted authorizations" were only nonfeasance, not knowing participation in the underlying fraud). As discussed above, *supra* pp.7-10, Plaintiffs allege at most only that Meta provided and failed to revoke advertising tools made available to all advertisers on Meta's services.

### 3. Disputing SLUSA's "in connection with" prong would concede causation.

To state an aiding-and-abetting claim, Plaintiffs must allege Meta's "assistance … was a substantial factor in causing the harm suffered." *American Master Lease*, 225 Cal. App. 4th at 1476. To the extent they dispute Meta's conduct was "in connection with" their purchase of JYD shares, they concede that Meta's conduct fails this "substantial factor" test. *Supra* pp.13-14.

### B. Plaintiffs Do Not Adequately Allege Their Contract, Implied Covenant, And Promissory Estoppel Claims (Counts II, III, and IV)

#### 1. Plaintiffs do not plausibly allege an enforceable promise.

As *Bouck* correctly held, Plaintiffs' contract, implied covenant, and promissory estoppel

claims each fails because they do not identify an enforceable promise. *See* 2026 WL 810036, at *7-8. Courts "throughout this district have consistently held that Meta's TOS do not create an 'affirmative obligation' on Meta to act." *Isgur v. Meta Platforms, Inc.*, 2026 WL 194640, at *6 (N.D. Cal. Jan. 26, 2026). As in *Bouck*, Plaintiffs' contract, implied covenant, and promissory estoppel claims hinge on language that "does not expressly or impliedly impose a binding contractual obligation on Meta to do anything." 2026 WL 810036, at *7; *see also Isgur*, 2026 WL 194640, at *7 (Meta's Terms not "contractual *guarantee* that Meta will respond to any particular problem in any particular manner and therefore 'cannot rise to the level of a contractual duty'").

Instead, the language Plaintiffs cite is "much more naturally read as … creating a duty *of its users* not to pollute Meta's platforms." *Bouck*, 2026 WL 810036, at *7. Per Meta's Terms, the Community Standards and Advertising Policies are "guidelines outlin[ing] … standards regarding the content *you* [the user] post … and *your* activity on Facebook and other Meta Products"—not Meta's obligations. Compl. Ex. A at 11 (§ 5); *accord id.* ("Advertising Policies … specify what types of ad content are allowed by partners who advertise across the Meta Products."). "[M]erely stating that Facebook does not allow users to post harmful content and that they will remove [such content]" is "mere[ly] 'a general monitoring policy'" insufficient to evade Section 230. *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *9 (N.D. Cal. Oct. 3, 2022); *Shared.com v. Meta Platforms, Inc.*, 2022 WL 4372349, at *3 (N.D. Cal. Sept. 21, 2022) ("criteria for suspending accounts … simply restates Meta's ability to exercise editorial discretion"); *Kennedy v. Meta Platforms, Inc.*, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024) (similar).

Moreover, where Meta's Terms and policies "even mention[] Meta doing something to prevent fraud," they use "aspirational terms"—not "promises to take concrete steps to effectuate that aspiration." *Bouck*, 2026 WL 810036, at *7. Plaintiffs allege "Meta's agreement with its users … states that Meta … will 'take action' to prevent and remove" violative content. Compl. ¶ 98. But the Complaint repeatedly omits qualified, discretionary language in Meta's Terms. Plaintiffs cite language from the Terms explaining that Meta "[p]romot[es] the safety, security, and integrity of [its] services" and "combat[s] harmful conduct and keep[s] our community of users safe." *Id.* ¶ 101. But the Terms explain this means that Meta employs teams, works with third parties, and

develops advanced technical systems to identify circumstances where it "*may* be able to help." *Id.* Meta further states it "*may*"—not "will," as Plaintiffs allege—"take appropriate action" that "*may* include" removing content or disabling accounts. *Id.*; *see also id.* ¶¶ 116, 151.

The language in Meta's Community Standards on which Plaintiffs rely, which states Meta "'does not allow' investment scam ads," Compl. ¶¶ 151, 165, also makes clear that Meta does *not* promise it will remove all violative content. Instead, the same page uses aspirational language that Meta "aim[s]" to protect its users from deceptive content by "removing content and combatting behavior." *Id.* Ex. B at 2. Other language Plaintiffs claim created enforceable promises also uses qualified, discretionary language. That includes Meta's Advertising Policies that state "Ads Must Comply" with the Community Standards, Compl. ¶ 108, but also explain that review of advertisements only "*may* result in advertising restrictions," Lewis Decl. Ex. D at 1. Indeed, despite Meta's extensive efforts to remove scam content, *supra* p.4, it acknowledges that its "[ad] review process may not detect all policy violations," Lewis Decl. Ex. D at 2.

Finally, Meta expressly "disclaim[ed] any intention to be bound" by the purported promises on which Plaintiffs rely. *Barnes*, 570 F.3d at 1108. Meta's Terms state that it "make[s] no guarantees that [its Products] will always be safe, secure, or error-free," "do[es] not control or direct what people and others do or say," and is not "responsible for their actions or conduct (whether online or offline) *or any content they share*." Compl. Ex. A at 9-10 (§ 4.3). The Ninth Circuit relied on similar language to find the absence of an enforceable promise, dismissing breach of contract claims as "barred by Facebook's terms of service, which expressly disclaim Facebook's responsibility for the content published by third parties." *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017). Numerous decisions from within this district have likewise held that this disclaimer defeats assertions of enforceable contractual promises to police third-party content. *See, e.g.*, *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010); *Kennedy*, 2024 WL 4565091, at *3; *Pete v. Facebook Data Breach*, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026); *Barfuss v. Live Nation Ent., Inc.*, 2025 WL 1843207, at *5 (C.D. Cal. May 14, 2025). And this disclaimer aligns with Congress's intent in Section 230 "to ensure that service providers are not held responsible for content provided by third parties." *Noah v. AOL Time Warner*,

*Inc.*, 261 F. Supp. 2d 532, 545 (E.D. Va. 2003); *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). Given this express disclaimer, Plaintiffs cannot plausibly allege Meta "manifested its intent to be legally obligated to … combat scam advertisements." *Calise*, 103 F.4th at 743.[13]

Plaintiffs implied covenant and promissory estoppel claims similarly fail. "[T]o state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant … arose must be alleged." *Kroetch v. BAC Home Loan Servs.*, 2011 WL 4502350, at *3 (N.D. Cal. Sept. 27, 2011). This implied covenant "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Id.*; *see also Bouck*, 2026 WL 810036, at *8 (implied covenant cannot be "invok[ed] … to create new promises"). And among other elements of a promissory estoppel claim, Plaintiffs must allege "a promise clear and unambiguous in its terms." *Oster v. Caithness Corp.*, 2017 WL 3727174, at *13 (N.D. Cal. Aug. 30, 2017). Plaintiffs' failure to plausibly allege an enforceable promise is fatal to these claims.

### 2.    Plaintiffs do not plausibly allege breach of any purported promise.

Even had Plaintiffs sufficiently alleged that any of the above purported promises were enforceable, they do not plausibly allege any were breached. Far from alleging Meta "allow[ed]" scam ads, Plaintiffs incorporate by reference reporting on Meta's efforts to detect and *remove* deceptive content, including the removal of 1.1 *billion* pieces of such content in a single quarter of a single year. *Supra* p.4. And Plaintiffs nowhere allege that any of the ads at issue were ever reported to Meta until *after* the JYD scheme was completed, *id.*, thus failing to allege Meta was ever made aware of these ads in time to "take action" on them before they could allegedly harm Plaintiffs. Finally, Plaintiffs concede Meta *did* have an ad review process, Compl. ¶¶ 47, 58, 161, resulting in extensive removals of deceptive content, *supra* p.4. Plaintiffs' claim that the process

---

[13] *Calise v. Meta Platforms, Inc.*, 810 F. Supp. 3d 1038 (N.D. Cal. 2025) is not to the contrary. *Calise* considered a prior version of Meta's Terms, which stated Meta "*will* take appropriate action," not that it "may," and a prior version of Meta's Community Standards stating "[Meta] remove[s] content," without clarifying it merely "aim[s]" to. *Id.* at 1042. Moreover, the court certified its order for interlocutory review, in part because "reasonable jurists can and have actually disagreed" with *Calise*'s holding about whether the Terms "impose[d] the asserted legal obligations on Meta." 2026 WL 61483, at *2 (N.D. Cal. Jan. 8, 2026).

should have removed more content or should include certain other processes does not allege breach of a purported promise to *have* a review process. Thus, Plaintiffs do not plausibly allege Meta violated any of those purported promises.

### 3.    Plaintiffs' promissory estoppel claim is independently deficient.

Plaintiffs' promissory estoppel claim fails for two additional reasons. *First*, "a plaintiff 'cannot state a claim for promissory estoppel [where] a valid contract, supported by consideration, governs the same subject matter as the alleged promise.'" *Realtek Semiconductor Corp. v. LSI Corp.*, 2013 WL 4778140, at *1 (N.D. Cal. Sept. 6, 2013); *see also Bouck*, 2026 WL 810036, at *8. Here, Plaintiffs allege "[t]he ToS constitute an agreement between Meta and [its] users …, including Plaintiffs." Compl. ¶ 99. And Plaintiffs effectively concede the contract governs "the same subject matter" as their promissory estoppel claim, as they identify the same purported promises supporting both claims. *See id.* ¶¶ 151, 165. *Second*, Plaintiffs fail to plausibly allege, as they must, that they relied on a purported promise and that their "reliance [was] both reasonable and foreseeable." *Oster*, 2017 WL 3727174, at *13. Plaintiffs offer only conclusory allegations that their supposed reliance on the purported promises—which are not promises at all—was reasonable. *E.g.*, Compl. ¶ 167 ("Plaintiffs … reasonably relied on Defendant's promises when using Meta's products."). That sort of "formulaic recitation of the elements of a cause of action will not do" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plus, any reliance would have been neither reasonable nor foreseeable given Meta's express disclaimer of any obligation to remove potentially harmful third-party content. *Supra* pp.19-20.

### C.    Plaintiffs Do Not Adequately Allege Negligence (Count V)

Plaintiffs' negligence claim is deficient. First, Plaintiffs do not allege the "essential element" of duty. *Melton v. Boustred*, 183 Cal. App. 4th 521, 529 (2010). Duty "is not universal; not every defendant owes every plaintiff a duty of care"; it exists only "if the 'plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021). Second, Plaintiffs' negligence claim is barred by the economic loss rule.

### 1.    Plaintiffs allege only nonfeasance that does not support a duty.

Plaintiffs seek to impose a duty on Meta not for Meta's actions, but because it allegedly

failed to prevent third parties from "exploit[ing]" Meta's tools to defraud them. Compl. ¶ 39. "[A]s a general rule, one owes no duty to control the conduct of another." *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1129 (2002) (cleaned up). That "'rule derives from the common law's distinction between misfeasance and nonfeasance.'" *Id.* Misfeasance is "when a defendant makes the plaintiff's position worse," while nonfeasance is "when a defendant does not help a plaintiff." *Dyroff*, 934 F.3d at 1100-1101. Only misfeasance creates "an ordinary duty of care" "where none may have existed before." *Id.* at 1101. Nonfeasance creates a duty only if there is a "special relationship." *Melton*, 183 Cal. App. 4th at 531; *see also Planet Green*, 2025 WL 869209, at *2.

Here, Plaintiffs allege only nonfeasance. *See* Compl. ¶¶ 39, 173-174 (alleging negligence in not preventing "fraudsters" from "exploit[ing] Meta's ad development and targeting capabilities," failing "to prohibit fraudulent ads" on its services, "failing to implement reasonable policies and procedures to monitor, detect, and remove investment scam ads," and "fail[ing] to take appropriate action when made aware of the ads *used by the JYD scammers*"). These alleged "failure[s] to act" amount only to nonfeasance. *A.C.L. Computers & Software, Inc. v. United States*, 2017 WL 6060267, at *5 (N.D. Cal. Mar. 13, 2017).

The allegations that Meta "solicited, encouraged, and assisted the JYD scammers" by "contributing to the development of the scam ads" and "facilitating th[eir] targeting," Compl. ¶ 174, do not change the analysis. *First*, the "generality of the allegations" that Meta "solicited" and "encouraged" the ads "is insufficient to show misfeasance." *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 858 (N.D. Cal. 2023) (allegations that Meta "designed their platforms" to "increase minors' use" insufficient to allege misfeasance or duty to prevent third parties from harming users). *Second*, providing "content-neutral functions" is not misfeasance. *Dyroff*, 934 F.3d at 1100; *see also Planet Green*, 2025 WL 869209, at *2. No duty arises from merely providing "communication platform[s] … [that] do[] not by [themselves] create a risk of third-party misuse." *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *5 (C.D. Cal. Feb. 3, 2023). As the Ninth Circuit explained, "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101. *Bouck*'s holding that Meta engaged in misfeasance

is contrary to this precedent, based on the same reasoning as the court's Section 230 material contribution holding, 2026 WL 810036, at *9, incorrect for the same reasons, *supra* pp.7-11, and even if adopted would trigger SLUSA's bar, *supra* pp.11-13.

Thus, to allege the existence of a duty, Plaintiffs must plausibly allege they had a "special relationship" with Meta. They do not. Courts have recognized only a few "special relationships" including those "between business proprietors …, restaurants, and bars, and their tenants, patrons, or invitees," "common carriers and passengers," "innkeepers and their guests," and "mental health professionals and their patients." *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235-236 & n.14 (2005). These relationships "generally involve some kind of dependency or reliance." *Olson v. Children's Home Soc'y*, 204 Cal. App. 3d 1362, 1366 (1988). Here, Plaintiffs do not allege—nor could they—that Meta's services create any heightened dependency. Instead, they allege only the standard website-user relationships that courts have repeatedly held do not establish a "special relationship." *See Dyroff*, 934 F.3d at 1101; *Bogard v. TikTok Inc.*, 2025 WL 604972, at *9 (N.D. Cal. Feb. 24, 2025); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 851-852 (N.D. Cal. 2012); *Doe No. 14 v. Internet Brands, Inc.*, 2016 WL 11824793, at *4-6 (C.D. Cal. Nov. 14, 2016).

### 2. Plaintiffs' claim is barred by the economic loss rule.

Plaintiffs' negligence claim is also barred by California's "economic loss rule" which "provides that 'there is no recovery in tort for negligently inflicted "purely economic losses," meaning financial harm unaccompanied by physical or property damage.'" *Gerber v. Twitter, Inc.*, 2024 WL 1354449, at *6 (N.D. Cal. Mar. 29, 2024) (quoting *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022)). The rule applies where, as here, "the parties are in contractual privity" and "the claim is not independent of the contract." *Id.* (quoting *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022)). "In application, this rule means that tort damages, such as 'damages for mental suffering and emotional distress[,] are generally not recoverable in an action for breach of an ordinary commercial contract in California." *White v. FCA US LLC*, 2022 WL 3370791, at *4 (N.D. Cal. Aug. 16, 2022) (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 558 (1999)).

In short, "tort claims for monetary losses" "between contractual parties" are barred "when they arise from—or are not independent of—the parties' underlying contracts." *Sheen*, 12 Cal. 5th

at 923, 937. Plaintiffs' negligence claim is thus barred because "it would dictate terms … *contrary* to the parties' allocation of rights and responsibilities." *Id.* at 925 (emphasis original). The claim would hold Meta liable for the same conduct on which the contractual claims are based—allegedly failing to "monitor, detect, and remove" the challenged ads. Compl. ¶ 174. That would dictate terms contrary to Meta's express disclaimer of any obligation to monitor and take responsibility for third-party content. *Supra* pp.19-20. *Bouck* reasoned that "the contract between the parties does not cover this course of conduct" because it "does not impose on Meta any obligations to police conduct on its platforms," 2026 WL 810036, at *9, but that ignores that the disclaimer *does* cover this conduct and expressly provides that Meta has no such obligation, *supra* pp.19-20. And *Bouck*'s reasoning that the rule did not apply because of Meta's alleged "development of the offending ads" is based on the same erroneous reasoning as its material contribution holding, fails for the same reasons, and would trigger SLUSA's bar even if correct. *Supra* pp.7-13.

Finally, the harm Plaintiffs allege they experienced from this conduct was purely economic, amounting to money lost as a result of being induced to participate in the JYD scammers' scheme. *See* Compl. ¶¶ 21-23. As in *Calise*, Plaintiffs' negligence claim here fails under the economic loss rule. *See* 810 F. Supp. 3d at 1049-1050.

### 3. Disputing SLUSA's "in connection with" prong would concede causation.

Plaintiffs' negligence claim must allege Meta's conduct proximately caused their alleged harm. *Peredia*, 25 Cal. App. 5th at 688. If they dispute Meta's conduct was "in connection with" their purchase of JYD shares, they concede their failure to allege this element. *Supra* pp.13-14.

### D. Plaintiffs Fail To Adequately Allege Unjust Enrichment (Count VI)

There is no standalone cause of action for unjust enrichment, which is instead a request for restitution. *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. 2013). While courts "may 'construe [unjust enrichment] as a quasi-contract claim seeking restitution,'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), "a plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter,'" *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 983-984 (E.D. Cal.

Sept. 10, 2018). "Plaintiffs allege the existence of a contract … via Meta's TOS," so they cannot bring an "action for unjust enrichment in the alternative" unless they "plead[] facts suggesting the unenforceability or invalidity of the contract at issue." *Isgur*, 2026 WL 194640, at \*10. *Bouck*'s holding that Plaintiffs may plead a quasi-contract claim in the alternative did not address the failure to allege the unenforceability or invalidity of the contract at issue. 2026 WL 810036, at \*11.

Plaintiffs allege no such facts. Instead, Plaintiffs allege they "entered into a … contract with Meta consisting of the [Terms]." Compl. ¶ 150. Those Terms rebut Plaintiffs' claim that Meta is obligated to remove allegedly fraudulent ads. *Supra* pp.18-20. The subject matter of Plaintiffs' unjust enrichment claim as alleged—restitution based on Meta's alleged failure to "prevent the creation of" or "monitor, detect, and remove" scam ads, Compl. ¶ 181—is thus covered by the parties' "enforceable agreement." *See Copart*, 339 F. Supp. 3d at 983-984; *see also O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1000-1001 (N.D. Cal. 2014).

## IV.   RULE 12(b)(6) DISMISSAL SHOULD BE WITH PREJUDICE

If the Court dismisses under Rule 12(b)(6), as Meta contends it should, dismissal should be with prejudice.[14] Dismissal without leave to amend is appropriate where "[f]urther amendment would simply be a futile exercise." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020). That is the case where, as here, "Plaintiff['s] legal theories fail," regardless of deficiencies in their factual allegations. *Id.* And it is particularly appropriate where the futility of amendment is due in part to the operation of Section 230, which is designed to protect providers like Meta not only from "ultimate liability," but also from "having to fight costly and protracted legal battles." *Roommates*, 521 F.3d at 1175. Courts have repeatedly dismissed claims barred by Section 230 with prejudice. *See, e.g., Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) ("Because [the] claim is barred by [Section 230], … leave to amend … would have been futile. … [T]he district court properly dismissed … [the] claim with prejudice."); *Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at \*4 (N.D. Cal. June 10, 2025) (collecting cases).

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[14] SLUSA dismissals under Rule 12(b)(1) are without prejudice. *Northstar*, 904 F.3d at 834.

Dated: April 20, 2026                    Respectfully submitted,

                                         By:*/s/ Sonal N. Mehta*
                                         **WILMER CUTLER PICKERING**
                                           **HALE AND DORR LLP**
                                         SONAL N. MEHTA (SBN 222086)
                                         JESSICA LEWIS (SBN 302467)
                                         MADEEHA DEAN (SBN 340563)
                                         Sonal.Mehta@wilmerhale.com
                                         Jessica.Lewis@wilmerhale.com
                                         Madeeha.Dean@wilmerhale.com
                                         2600 El Camino Real, Suite 400
                                         Palo Alto, CA 94306
                                         Telephone: (650) 858-6000

                                         ARI HOLTZBLATT (SBN 354631)
                                         Ari.Holtzblatt@wilmerhale.com
                                         2100 Pennsylvania Avenue NW
                                         Washington, DC 20037
                                         Telephone: (202) 663-6443

                                         *Attorneys for Defendant Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of April, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

*/s/ Sonal N. Mehta*

Sonal N. Mehta