UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURIE DAIGNEAU, et al., | Case No. 25-cv-10180-WHO |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTIONS TO DISMISS** |
| META PLATFORMS, INC., | Re: Dkt. Nos. 29, 34 |
| Defendant. | |
| ANTHONY IRVING, et al., | Case No. 26-cv-01127-WHO |
| Plaintiffs, | |
| v. | Re: Dkt. No. 28 |
| META PLATFORMS, INC., | |
| Defendant. | |

In two related cases, plaintiffs allege that they fell for "pump-and-dump" investment schemes, advertised on Facebook and Instagram and carried out in WhatsApp groups, where criminal networks operating out of China pressured them to purchase "penny stocks"— for *Daigneau*, Ostin Technology Group Co., Ltd. ("OST") and for *Irving*, Jayud Global Logistics Ltd. ("JYD")—while the scams' orchestrators sold off their own shares. The plaintiffs all allege that with its advertising tools used to develop and target the fraudulent advertisements, Meta not only enabled and facilitated but also materially contributed to the scheme and is liable for the financial loss they suffered. This same scenario was alleged in *Bouck et al. v. Meta Platforms, Inc.* (25-cv-5194-RS), a case recently dismissed by Hon. Richard Seeborg. Because plaintiffs seek to hold Meta liable for its role creating, optimizing, and targeting the scam advertisements "in connection with" plaintiffs' purchase of securities, I agree with Judge Seeborg that their claims are barred

under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  Meta's motions to dismiss the claims asserted in these related cases for lack of jurisdiction under SLUSA are GRANTED.  Plaintiffs' complaints are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

Meta Platforms, Inc. ("Meta") is a technology company that operates the social networking platforms Facebook and Instagram, as well as the encrypted messaging application WhatsApp. *Daigneau* ACAC ¶¶ 25-26.[1]  Meta derives much of its revenue through advertising sales and provides tools to advertising customers to optimize and target advertisements on its social media platforms.  *Id.* ¶¶ 2-4.

This "case arises from Meta's role in enabling, facilitating, and materially contributing to a stock manipulation scheme that used advertisements created by Meta and distributed through [its] Facebook and Instagram social media platforms, and its WhatsApp messaging service, to extract millions of dollars from unsuspecting victims."  *Id.* ¶ 1.  Plaintiffs allege that advertisements "generated by Meta's advertising tools and deployed on Facebook and Instagram" that featured celebrities, "well-known investors," and "reputable financial advisory firms," and promised incredibly high returns "were an essential element" in attracting them to scam investment groups. *Id.* ¶¶ 71-76, 146.  The advertisements were "generated and optimized through Meta's advertising tools," were targeted by Meta to particularly susceptible individuals, and advertised trading strategies and particular investments that promised huge short-term returns.  *Id*. ¶¶ 76-78. Plaintiffs allege that clicking the advertisement links brought them to WhatsApp groups where the scammers spent weeks to months "providing investment recommendations and friendly communications to build trust."  *Id.* ¶¶ 12, 80, 84.

The plaintiffs in *Daigneau* assert that beginning in May 2025, fake investment advisors in the WhatsApp group pressured them to "purchase shares of OST," with promises that the price

---

[1] The *Daigneau* and *Irving* cases were related under Civil Local Rule 3-12.  Dkt. No. 22 in Case No. 25-cv-10180.  The allegations in the Amended Class Action Complaint in *Daigneau et al.* ("*Daigneau* ACAC," Dkt. No. 27 in Case No. 25-cv-10180) and in the Complaint in *Irving et al*. ("*Irving* Compl.," Dkt. No. 1 in Case No. 26-cv-01127)  are materially identical, other than the type of penny stock plaintiffs purchased.  Citations are to the *Daigneau* ACAC unless otherwise noted.

2

United States District Court
Northern District of California

"would appreciate significantly in the near future" and that "up to 80% of any losses on the OST investment" would be reimbursed. *Id.* ¶ 85. They were pressured to purchase large amounts of the stock, while the scammers began dumping millions of their own shares. *Id.* ¶¶ 87-91. The plaintiffs contend that scammers "dump[ing] nearly 2 million OST shares on June 26, 2025" led to a single-day collapse of the stock price that never recovered, causing "significant financial harm" to the plaintiffs and others within their class, with "more than 235 people" collectively losing "more than $20.8 million." *Id.* ¶¶ 92-94.

Similarly, the *Irving* plaintiffs allege that they purchased JYD shares beginning in March 2025 on advice from the fake investment advisors within their WhatsApp group. *Irving* Compl. ¶ 85. As in *Daigneau*, the victims were urged to buy quickly and divert investments to these shares, artificially raising JYD's stock price. *Id.* ¶¶ 87-89. Irving alleges that JYD's "stock price collapsed during after-hours trading on April 1, as the scammers and their co-conspirators liquidated their JYD holdings," and that "stop-loss orders failed to execute . . . as a result of rapid price gaps and thin liquidity." *Id.* ¶ 91. Altogether, Irving asserts that "more than 100 members of the JYD [plaintiff class] collectively suffered losses of more than $9 million." *Id.* ¶ 93.

Plaintiffs contend that Meta materially contributed to the stock schemes in the following ways: (i) "Meta's advertising tools developed and determined the content and appearance of the ads used to perpetrate the scam"; and (ii) "Meta's tools directed the ads to particular Facebook and Instagram users (known only to Meta) indicating the users would be vulnerable to the ads, including by targeting users who demonstrated an interest in investing." *Daigneau* ACAC ¶¶ 18, 132. Plaintiffs also identify three specific Meta tools that developed content for the scam advertisements: (i) "Flexible Format," which automatically selects certain advertising characteristics (e.g., layout, content, location) taking into account individual user preferences to enhance engagement with the advertisements; (ii) "Dynamic Creative," which mixes and matches advertiser content to create personalized versions for targeted user; and (iii) "Advantage+ Creative," which modifies advertiser content with generative AI (e.g., editing images or changing text overlays) to improve performance. *Id.* ¶¶ 124-26. Plaintiffs assert that by optimizing advertising design, placement, and targeting, Meta "was instrumental" to the schemes and

3

materially contributed to plaintiffs' harm. *Id.* ¶¶ 3, 133.

Plaintiffs allege that Meta was aware of investment fraud schemes perpetrated through its platforms, specifically including investment scams originating in China. *Id.* ¶¶ 67, 69. They also assert that despite its promises otherwise, Meta did not review, prevent, or remove the fraudulent advertisements in violation of its Terms of Service ("TOS"), Advertising Standards, and Community Standards. *Id.* ¶¶ 101-115.

As a result, plaintiffs bring the following causes of action against Meta on behalf of themselves and proposed classes of purchasers of OST and JYD stock: (i) aiding and abetting fraud; (ii) breach of contract; (iii) breach of the implied covenant of good faith and fair dealing; (iv) promissory estoppel; (v) negligence; and (vi) unjust enrichment. *Id.* ¶¶ 141-84. Meta moves to dismiss each set of plaintiffs' claims on identical grounds; moving under Rule 12(b)(6) arguing plaintiffs' claims are barred by Section 230 of the Communications Decency Act (47 U.S.C. § 230) and otherwise fail to state a claim, but also moving to dismiss under Rule 12(b)(1) arguing that all of plaintiffs' claims are barred under SLUSA. *See* Dkt. Nos. 29, 34 in Case No. 25-cv-10180; Dkt. No. 28 in 26-cv-01127. As explained below, I find that the claims in both cases are barred under SLUSA, GRANT the 12(b)(1) motions to dismiss for lack of jurisdiction, and DENY the 12(b)(6) motions to dismiss as moot.

**DISCUSSION**

Meta's overarching argument is that all claims in both *Daigneau* and *Irving* are barred by SLUSA, which Congress enacted in the 1990s to limit "perceived abuses of the class action vehicle in litigation involving nationally traded securities." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). Under SLUSA, no individual can bring "(1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 828 (9th Cir. 2018); 15 U.S.C. § 78bb(f)(1). No suit meeting these criteria "may be maintained in any State or Federal court by any private party." 15 U.S.C. § 78bb(f)(1). The Ninth Circuit has "clarif[ied] that dismissals pursuant to SLUSA's class-action bar must be for lack of

subject-matter jurisdiction—and therefore without prejudice—rather than on the merits." *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017).

Meta contends that both sets of plaintiffs' claims meet all five requirements for SLUSA preclusion. *Daigneau* Motion to Dismiss for Lack of Jurisdiction [Dkt. No. 34] at 2-5; *Irving* Motion to Dismiss [Dkt. No. 28] at 11-14. Plaintiffs' opposition focuses on the fourth, "in connection with," factor.

In *Dabit*, the Supreme Court characterized the "in connection with" requirement as met when the alleged fraud or misrepresentation simply "coincide[s] with a securities transaction." *Dabit*, 547 U.S. at 85. The Court narrowed the "in connection with" requirement by adding a materiality component in *Chadbourne & Parke LLP v. Troice*: the alleged misrepresentation must "make[] a significant difference to someone's decision" to buy or sell a security. 571 U.S. 377, 387 (2014).

Plaintiffs try to distance Meta's alleged misrepresentations from their subsequent securities transactions with the scammers, arguing that their claims against Meta are not "in connection with" their actual purchase of securities but rather "arise from Meta's advertising business and its failure to comply with its state-law duties and contractual obligations by fostering relationships with scammers and facilitating their fraudulent conduct." *Daigneau* Opposition ("*Daigneau* Oppo.") [Dkt. No. 37] at 1. The cases plaintiffs rely on, however, do not address situations like the one here where plaintiffs' harm arises from the challenged misrepresentations that induce securities transactions, but instead address harm arising from misrepresentations about the performance of stock trading platforms. *See Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1103 (S.D. Cal. 2000) (SLUSA did not preclude claims challenging defendant's misrepresentations related to how quickly investments would be purchased, where the loss was the result of defendant's "technical inability to process an order request, and was not the result of market manipulation or misrepresentations concerning the risk of a particular investment or investment system"); *In re Robinhood Outage Litigation*, 495 F. Supp. 3d 831, 835 (N.D. Cal 2020) (SLUSA did not preclude claims "based entirely on the allegation that Robinhood promised users robust and best-in-class technology, and failed to deliver"). Here, Meta is alleged to have

helped develop and target advertisements at these very plaintiffs, including specifically identified advertisements promising sky-high returns on investments. It was the purchase of these investments that Meta is alleged to have aided and abetted that caused their harm.

Nor is this case like *Anderson v. Edward D. Jones & Co L.P.*, 990 F.3d 692 (9th Cir. 2021). In *Anderson*, the Ninth Circuit ruled that an omissions claim regarding the fees related to investment accounts – *i.e.*, failing to disclose the impact of switching from a commission-based fee to a transaction-based fee – was not precluded under SLUSA because there were no allegations that plaintiffs' trading behavior with respect to a covered security or group of covered securities was impacted. *Id.* at 705-707. Here, the way plaintiffs have voluntarily framed their claims and causes of action against Meta in their complaints (casting Meta as an integral participant in the fraud scheme that started with Meta allegedly generating, optimizing, and targeting the investment scheme advertisements promising high returns and soon thereafter led to plaintiffs' purchase of the covered securities) means that SLUSA's "in connection with" requirement is met. Plaintiffs expressly allege that Meta's role was a material part of the causal chain that led plaintiffs to purchase the covered securities and that Meta, therefore, is liable for aiding, abetting, and failing to prevent the fraud.

Finally, the plaintiffs argue that "application of SLUSA here would undermine, rather than give effect to, the purpose of the statute." *Daigneau* Oppo. at 5. They argue that Meta, "as a quasi-advertising agency," is not the type of defendant Congress intended SLUSA to protect from securities litigation. *Id.* at 8-9. However, as Meta points out, plaintiffs cite nothing in support of their policy argument or proposed limitation to exclude Meta as an "advertising agency" when its conduct is an allegedly integral part of the securities fraud scheme. *Daigneau* Jurisdiction Reply [Dkt. No. 39] at 5. I agree with Meta that SLUSA's purpose —preventing duplicative litigation— is being protected here because there are securities cases regarding the OST and JYD stock schemes pending in the Southern District of New York. *Id.* at 4 (citing *Gordon v. Ostin Tech. Grp. Co., Ltd.*, Case No. 26-cv-01288 (S.D.N.Y. Feb. 16, 2026); *Irving* Reply [Dkt. No. 31] at 8-9 (citing *Lindstrom v. Jayud Glob. Logistics Ltd., et al.*, Case No. 25-cv-09662 (S.D.N.Y. Nov. 19, 2025).

United States District Court
Northern District of California

My conclusion is on all fours with a recent decision from Judge Seeborg in a case brought by the same plaintiffs' counsel against Meta for identical conduct: that Meta facilitated and materially contributed to a penny-stock scheme perpetrated by a criminal network in China. *Bouck et al. v. Meta Platforms, Inc.*, 25-cv-05194-RS, 2026 WL 1697631 (N.D.Cal. June 11, 2026). As here, the jurisdictional argument in *Bouck* centered on SLUSA's "in connection with" requirement. *Id.* at *2-3. Judge Seeborg similarly found that factor was met and rejected plaintiffs' comparisons to *Abada*, *In re Robinhood*, and *Anderson*. *Id.* at *5-6. Like Judge Seeborg, I conclude that Meta has the better position.

SLUSA precludes all *Daigneau* and *Irving* claims as alleged.[2] Those complaints are DISMISSED WITHOUT PREJUDICE. The grounds on which Meta moved to dismiss under Rule 12(b)(6) are therefore moot.

**CONCLUSION**

For these reasons, I lack jurisdiction to hear either of these cases. Meta's motions to dismiss for lack of jurisdiction are GRANTED. As such, both *Daigneau* and *Irving* are DISMISSED WITHOUT PREJUDICE, and the motions to dismiss for failure to state a claim are denied as moot.

**IT IS SO ORDERED.**

Dated: July 17, 2026

William H. Orrick
United States District Judge

---

[2] At oral argument, but not in the briefs, plaintiffs argued their breach of contract claims would not be precluded under SLUSA. I need not consider this waived argument, but I note in passing that plaintiffs expressly allege that Meta breached its contracts by not only failing to prevent or remove the investment scam advertisements but *also* because Meta "materially contribut[ed]" to the advertisements. *Daigneau* ACAC ¶ 157. That is the same conduct underlying the fraud claims. Moreover, the only harm from the alleged breach of contracts is the harm from the purchase of the securities. The breach of contract claims, therefore, readily fall within the preclusive effect of SLUSA.